Everett L. BUCKLEY, Appellant,

v.

Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.

No. 96–1764.

United States Court of Veterans Appeals.

Dec. 3, 1998.

James W. Stanley, Jr., was on brief for the appellant.

John H. Thompson, Acting General Counsel; Ron Garvin, Assistant General Counsel; Michael A. Leonard, Deputy Assistant General Counsel; and Lisa A. Willett were on brief for the appellee.

Before NEBEKER, Chief Judge, and STEINBERG and GREENE, Judges.

STEINBERG, Judge:

The appellant, veteran Everett L. Buckley, appeals through counsel an October 1, 1996, decision of the Board of Veterans' Appeals (BVA or Board) denying an increased rating

for Department of Veterans Affairs (VA) service-connected disability compensation for bilateral pes planus, currently rated as 30% disabling, and denying service connection for diabetic neuropathy of the lower extremities and degenerative joint disease (DJD) of the left knee, both as secondary to the service-connected pes planus. Record (R.) at 3. The appellant has filed a brief, and the Secretary has filed a motion for affirmance by a single judge. This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). For the reasons that follow, the Court will deny the Secretary's motion and will affirm the BVA decision in part and remand a matter for further proceedings.

## I. Background

The appellant had active duty in the U.S. Army from September 1941 to November 1945. R. at 15. In 1946, he was awarded service connection for pes planus rated at 0%, effective the day after his separation from service. ("Pes planus" is flat feet. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1268 (28th ed.1994).) Since that determination, the veteran has on several occasions submitted medical evidence in support of claims for an increased rating for his pes planus, much of which describes pain in the veteran's legs and feet. *See, e.g.,* R. at 58 (July 1952 VA examination report describing "pain" in veteran's "arches and legs"), 231 (June 1990 VA examination report indicating that veteran complained of leg cramps). After several VA regional office (RO) decisions on the matter (*see, e.g.,* R. at 68 (VARO decision granting 10% rating for service-connected pes planus), 214 (RO denial of claim for increase)), the veteran received in September 1990 a rating of 30%, effective January 29, 1990 (R. at 236). The September 1990 decision noted that the veteran suffered "cramping and pain in legs" attributed to non-service-connected diabetes. *Ibid.* The veteran has continued to apply for increases above 30% for his pes planus and to submit evidence in support thereof. *See, e.g.,* R. at 258 (rating decision denying increase), 307 (confirmed rating decision).

In October 1990, the veteran filed with the RO a claim for "service connection" for his "legs and thighs as proximately due to or the result of [his] service[-]connected pes planus". R. at 239. He stated: "Please consider this a claim for increased benefits to include the [leg and thigh] disabilities"; he described "pain" in the "lower half of [his] body" (*ibid.*) but did not describe or refer to any diagnosis or specific condition (*see ibid.*). A February 1991 RO decision on the issue of "SC for bilateral lower-extremity conditions as secondary to bilateral pes planus" denied service connection "for bilateral lower degenerative joint disease of lt. lower leg and diabetic neuropathy of BIL lower extremities". R. at 258. Subsequently, the RO received a December 1990 letter from Dr. Pyle that described "tenderness" in the veteran's left calf but Dr. Pyle "[could] not say definitively whether or not the foot problems aggravate the left calf problems but this is possible". R. at 261. The RO addressed Dr. Pyle's letter in a March 18, 1991, confirmed decision that stated: "The evidence does not show that [the] veteran['s] left leg and arthritis are secondary to [service-connected] pes planus". R. at 266.

The veteran's service organization representative submitted a Notice of Disagreement (NOD) dated March 26, 1991, that included the statement: "[P]lease accept this memo[randum] as a Notice of Disagreement on behalf of Mr. Buckley relative to the bilateral lower-extremity condition pertaining to the left leg" (R. at 268); attached thereto was a document signed by Mr. Buckley that included the statement: "Please accept this as a total disagreement to the [February 1991] decision.... I feel that the pes planus ... has caused my lower extremities to develop[ ] to their present condition and not the diabetes alone." (R. at 269). The veteran then filed in May 1991 a VA Form 1–9, Substantive Appeal to the BVA (Form 1–9), regarding "[e]ntitlement to bilateral lower[-]extremity conditions as secondary to ... pes planus" (R. at 280) in which he alleged cramps in both of his knees and calves. *Ibid.* In June 1991, a private podiatrist noted that the veteran suffered "overuse syndrome" in his leg muscles due to an irregular gait which compensated for pronation of the foot due to pes planus. R. at 285. Later that month, the RO denied service connection for "bilateral lower leg conditions", specifically dis-

cussing DJD, diabetic neuropathy, and "overuse syndrome". R. at 295. A VA medical examination in February 1992 noted swelling in the veteran's lower leg due to "an element of diabetic neuropathy" and "also that his . . . pes planus deformity do[es] contribute to his symptomatology" (R. at 337), and in January 1993 a private chiropractor opined that the veteran's "obvious pronation of both feet" directly influenced "the mechanical integrity of the lower extremities" (R. at 374).

In June 1995, the Board remanded the matter of "a lower[-]extremity disability, manifested as diabetic neuropathy and degenerative joint disease of the left knee, developed secondary to service-connected pes planus" for further factual development, specifically noted previous medical findings of "overuse" (R. at 397–98), and ordered that the matter be returned to the Board thereafter "if in order" (R. at 400) ("The appellant need take no action unless otherwise notified"). An August 1995 VA examination report noted that, in addition to diabetic neuropathy, "some of" the veteran's leg cramping "may be related to abnormal foot posturing while walking". R. at 408. The case was subsequently returned to the Board which, in the October 1, 1996, BVA decision here on appeal, denied an increased rating above 30% for the veteran's service-connected pes planus and denied service connection for diabetic neuropathy and DJD as secondary to pes planus. R. at 3.

## II. Analysis

### A. Rating Increase

 A claim for an increased rating is a new claim, not subject to the provisions of 38 U.S.C. § 7104(b) prohibiting reopening of previously and finally disallowed claims except upon new and material evidence. *See Proscelle v. Derwinski*, 2 Vet.App. 629, 631–32 (1992). "[A] person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded". 38 U.S.C. § 5107(a); *see also Robinette v. Brown*, 8 Vet.App. 69, 73 (1995). A well-grounded claim is "a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [section 5107(a)]". *Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990). A claim for an increased rating is generally well grounded when an appellant indicates that he has suffered an increase in disability. *See Proscelle, supra; cf. Jones (Wayne) v. Brown*, 7 Vet.App. 134, 138 (1994) (claim for increased rating was not well grounded where only asserted ground for increase was that service-connected condition had caused *secondary* condition, but no medical evidence had been presented to establish such causation). The Court, on de novo review, holds that the appellant's allegation that his condition has worsened is plausible and thus his claim is well grounded.

Accordingly, we now review his entitlement to an increased rating for bilateral pes planus, currently rated as 30% disabling. The VA rating schedule for "Flatfoot, acquired", provides:

Pronounced; marked pronation, extreme tenderness of plantar surfaces of the feet, marked inward displacement and severe spasm of the tendo achillis [sic] on manipulation, not improved by orthopedic shoes or appliances.
Bilateral . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50%
Unilateral . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30%
Severe; objective evidence of marked deformity (pronation, abduction, etc.), pain on manipulation and use accentuated, indication of swelling on use, characteristic callosities:
Bilateral . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30%
Unilateral . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20%

38 C.F.R. § 4.71a, Diagnostic Code (DC) 5276 (1998).

 In the present case, the Board determined that the criteria for a rating above 30% for bilateral pes planus were not met.

The Court reviews Board determinations pertaining to the assignment of a disability rating under the "clearly erroneous" standard of review set forth in 38 U.S.C. § 7261(a)(4); "if there is a 'plausible' basis in the record for the factual determinations of the BVA, ... [the Court] cannot overturn them". *Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1990); *see also Lovelace v. Derwinski,* 1 Vet.App. 73, 74 (1990). Applying this standard, the Court holds that there exists a plausible basis in the record to support the Board's finding that the veteran was not entitled to a disability rating above 30% for pes planus. Although records from a June 1991 podiatry examination indicated that the veteran walked with pronation (R. at 285), such a notation does not satisfy the criteria for a 50% disability rating, which requires "marked pronation". *See* DC 5276, *supra.* Furthermore, other than a February 1990 finding of pain on the plantar aspect, which was apparently attributed to diabetic neuropathy (R. at 228), there is no evidence of "extreme tenderness of the plantar surfaces of the feet"; additionally, there is no evidence of "marked inward displacement" or "severe spasm" of the tendo achillis [sic] on manipulation, as required by DC 5276. Finally, the Board properly did not consider the evidence of the veteran's lower-leg pain in its determination of the disability rating— all of the relevant criteria for both a 30% and a 50% rating pertain to the foot area and there is nothing to indicate that the criterion of "pain" pertains to a part of the body beyond the foot for the purposes of DC 5276. Accordingly, the Court holds that the Board did not err in its determination that the veteran was not entitled to a disability rating above 30% for pes planus.

### B. Secondary Service Connection

In addition to an increased rating for his pes planus, the veteran asserts that he reasonably raised a claim regarding "leg cramping and other dysfunction of his lower extremities [that] were secondarily caused by his bilateral pes planus" (Brief (Br.) at 7), that that claim was well grounded (Br. at 9), and that the Board erred by failing to adjudicate the matter fully (*ibid.*). However, the veteran has conceded in his brief that "his left knee disorder is not service connectable secondary to his altered gait by the bilateral pes planus". Br. at 7; *see also* Br. at 9. Hence, he has abandoned that issue on appeal, and the Court will thus not review the Board's denial of service connection for DJD in the veteran's left knee. *See Green (Doris) v. Brown,* 10 Vet.App. 111, 114 (1997). He also advances no arguments to support an appeal of the Board's denial of service connection for diabetic neuropathy secondary to service-connected pes planus; thus, the Court considers that he has abandoned that claim on appeal as well. *See Ford v. Gober,* 10 Vet.App. 531, 535–36 (1997); *Degmetich v. Brown,* 8 Vet.App. 208, 209 (1995), *aff'd,* 104 F.3d 1328 (Fed.Cir.1997). The appellant, therefore, seeks review by this Court only of the matter of his entitlement to secondary service connection for conditions of the lower extremities other than DJD and diabetic neuropathy. Based on the following analysis, the Court agrees with the appellant on this question.

■ The Court has held that where a "review of all documents and oral testimony reasonably reveals that the claimant is seeking a particular benefit, the Board is required to adjudicate the issue of the claimant's entitlement to such a benefit or, if appropriate, to remand the issue to the RO for development and adjudication of the issue." *Suttmann v. Brown,* 5 Vet.App. 127, 132 (1993); *see also Solomon v. Brown,* 6 Vet.App. 396, 402 (1994); *EF v. Derwinski,* 1 Vet.App. 324, 326 (1991). However, these requirements must be read in the context of this Court's as well as the Board's jurisdiction over claims and issues.

■ This Court's appellate jurisdiction derives exclusively from the statutory grant of authority provided by Congress and may not be extended beyond that permitted by law. *See Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 818, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988); *Prenzler v. Derwinski,* 928 F.2d 392, 393–94 (Fed.Cir.1991); *Velez v. West,* 11 Vet.App. 148, 157 (1998); *Skinner v. Derwinski,* 1 Vet.App. 2 (1990). The Court has jurisdiction to review only those final BVA decisions prior to which an

NOD was filed on or after November 18, 1988, as to an underlying decision of an RO or other agency of original jurisdiction (AOJ). *See* Veterans' Judicial Review Act, Pub.L. No. 100–687, § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C. § 7251 note) [hereinafter VJRA § 402]; 38 U.S.C. § 7105; *Barrera v. Gober*, 122 F.3d 1030, 1031 (Fed. Cir.1997); *Grantham v. Brown*, 114 F.3d 1156, 1157 (Fed.Cir.1997), *rev'g*, 8 Vet.App. 228 (1995); *Velez*, 11 Vet.App. at 157 ("Court has no jurisdiction over an issue absent a post-November 18, 1988, NOD, expressing disagreement with an RO's decision on that issue or with an RO's failure to adjudicate that [issue]"). An NOD is defined by regulation as "[a] written communication from a claimant or his or her representative expressing dissatisfaction or disagreement with an adjudicative determination by the [RO] and a desire to contest the result"; it "must be in terms which can be reasonably construed as [expressing] disagreement with that determination and a desire for appellate review". 38 C.F.R. § 20.201 (1995); *see also Beyrle v. Brown*, 9 Vet.App. 24, 27 (1996); *Hamilton v. Brown*, 4 Vet.App. 528, 531 (1993) (en banc), *aff'd*, 39 F.3d 1574, 1584–85 (Fed.Cir.1994). "Whether a document is an NOD is a question of law for the Court to determine de novo under 38 U.S.C. § 7261(a)." *Beyrle*, 9 Vet.App. at 27–28; *see also Hamilton*, 4 Vet.App. at 538–44 (determining whether jurisdictionally valid NOD had been filed with respect to claim without having had such determination made by the Board), *aff'd*, 39 F.3d at 1584–85. There can be only one valid NOD as to a particular issue until a final RO or BVA decision has been rendered in that matter, or the appeal has been withdrawn by the claimant. *See Hamilton*, 4 Vet.App. at 531–32, *aff'd*, 39 F.3d at 1581–85.

Just as the Court's jurisdiction is dependent on a jurisdiction-conferring NOD, the Board's jurisdiction, too, derives from a claimant's NOD. *See Marsh v. West*, 11 Vet. App. 468, 470 (1998) ("an untimely NOD deprives [BVA] of jurisdiction"); *Garlejo v. Brown*, 10 Vet.App. 229, 232 (1997) (Board did not err in refusing to adjudicate matter as to which no NOD was filed). When the Board has jurisdiction over a particular mat-

ter, that jurisdiction is "mandatory". *In the Matter of Fee Agreement of Cox*, 10 Vet.App. 361, 374 (1997), *vacated in part on other grounds sub nom. Cox v. West*, 149 F.3d 1360, 1365 (Fed.Cir.1998) (expressly affirming that "the [C]ourt [of Veterans Appeals]" properly held that such a decision by the Secretary is mandatory); *see also Solomon, Suttmann,* and *EF,* all *supra* (Board must adjudicate all claims reasonably raised to it).

Two recent decisions of the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) clarify the extent to which specific arguments regarding claims must appear in an NOD and the extent to which those arguments—as opposed to the underlying claims in support of which those arguments are advanced—must be raised to the Board in order for the Board to be required to consider them and for this Court properly to consider them. As to the first matter, the Federal Circuit in *Ledford v. West* held that this Court is without jurisdiction to review challenges to a BVA denial of a claim as to which no timely NOD had been filed but, in so doing, stated that an appellant's "legal reasoning supporting such a challenge need not appear in the NOD, *see* 38 C.F.R. § 20.201 (1998)". *Ledford,* 136 F.3d 776, 780 (Fed.Cir. 1998). In *Ledford,* the Federal Circuit held that a 1991 NOD expressing disagreement with a *1990* RO determination did not give this Court jurisdiction over a *1981* RO determination terminating individual unemployability benefits. *Ibid.* Subsequently, in *Collaro v. West,* the Federal Circuit held that, where an appellant has in fact filed an NOD sufficient to place a particular claim into appellate status, this Court has jurisdiction over all issues that are "appropriately identified [from] the radix of his [NOD]". *Collaro,* 136 F.3d 1304, 1310 (Fed.Cir.1998); *see also id.* at 1309 (noting that, in *Ledford,* the appellant's NOD had "specifically identified and thus limited" the matter put into appellate status).

When read together and in the context of the prior precedent described above, *Ledford* and *Collaro* support the proposition that this Court has jurisdiction over claims that an appellant has reasonably raised to the RO and that the BVA has failed

properly to adjudicate, and that the Court may entertain any arguments made in support of such claims when presented with a "vague" or general NOD or, at least, one that does not limit the Court's consideration of the arguments made. *Ibid.* Further, where the RO and BVA have failed to address an argument reasonably raised by a claimant in support of a claim over which the Court has jurisdiction by virtue of an NOD that satisfies VJRA § 402, the Court will remand the claim with directions that the Board address the particular argument(s) in support thereof. *See Collaro v. West,* 12 Vet.App. 63 (1998) (remanding claim and ordering, if appropriate based on resolution of other matter, consideration of arguments based on Constitution and Administrative Procedure Act (APA) previously raised to Board but not addressed by it); *see also Isenbart v. Brown,* 7 Vet.App. 537, 540–41 (1995) (holding that jurisdiction-conferring NOD encompassed claim that RO had failed to adjudicate but that had been reasonably raised to it, and remanding that claim for Board review); *cf. Ledford,* 136 F.3d at 782 ("[b]ecause Ledford's APA and constitutional challenges have not been raised before the [BVA], the Court of Veterans Appeals did not err in declining to exercise jurisdiction over [them]").

In this case, the veteran's NOD consisted of both his own statement and the letter to which the statement was attached that was submitted in March 1991 on his behalf by his service organization representative. R. at 268–69. (The Court notes that the Secretary's characterization in the Table of Contents to the Record on Appeal of an August 1991 letter (*see* R. at 312) as the NOD does not affect our de novo determination of the matter, *see Beyrle, supra* (Court may construe document as NOD even when Secretary did not construe it as such).) His NOD expressed "total disagreement" (R. at 269) with the RO "relative to the . . . secondary conditions" (R. at 268). Further, the veteran's Form 1–9 appealed the matter of "[e]ntitlement to bilateral lower[-]extremity conditions as secondary to . . . pes planus" (R. at 280) and in June 1991 a hearing officer denied service connection for "bilateral lower leg conditions", specifically discussing DJD,

diabetic neuropathy, *and* "overuse syndrome" (R. at 295). The record contains numerous medical reports of problems with the lower extremities, such as cramping, due or possibly due to an abnormal gait caused by pronation of the feet caused by pes planus. *See, e.g.,* R. at 285, 337, 374, 408.

■ The Secretary argues that the veteran's entitlement to secondary service connection for a lower-extremity disability has already been "actually raised and adjudicated" by the Board, apparently asserting that the Board's discussion of DJD and diabetic neuropathy encompassed any and all possible lower-extremity disabilities presented in the medical records in the record on appeal. Motion at 15. Again, the Court notes that the veteran disagreed with the initial RO decision in February 1991 regarding whether the veteran was service connected for *any* "bilateral lower[-]extremity conditions" (R. at 259), and did not limit his NOD to the RO's denial of secondary service connection for DJD and diabetic neuropathy (R. at 268–70). *See Collaro,* 136 F.3d at 1310 (as to Board's not being permitted to narrow issue as to which timely NOD had been filed as distinguished from situation where NOD is directed at specific and limited issue). Further, the RO and the BVA itself specifically addressed at least one other condition of the lower extremities (i.e., overuse) during the course of the adjudication of this veteran's claim. R. at 295 (RO determination that "overuse syndrome is not a disability under the law"), 399 (Board remand ordering VA examination "as to whether . . . there is an etiologic relationship between service-connected pes planus and the inception of *any* current lower[-]extremity disability" (emphasis added)). Significantly, the Board decision itself described in detail numerous medical reports supporting the veteran's claim for one or more lower-extremity disabilities *other than* DJD or diabetic neuropathy. For example, the Board discussed, inter alia, the September 1969 VA examination (R. at 76) diagnosing arteriosclerosis obliterans of the lower extremities and pes planus (R. at 6); reports from a private podiatrist in June 1991 (R. at 285) and October 1992 (R. at 361) attributing the veteran's leg pain to "over-

use" and to his abnormal gait due to his foot problem (R. at 8); a January 1993 report from a private chiropractor (R. at 374) indicating that pronation of the veteran's feet was causing him pain and cramping in both legs (R. at 9); and the report of a July 1995 VA neurological examination (R. at 404) stating that the veteran's leg cramps may be related to abnormal foot posturing while walking (R. at 9). The Board decision even conceded that "the medical evidence indicates that at least some of the pain and cramping symptomatology is attributed to the foot disorder". R. at 11. However, the Board then analyzed that symptomatology as a basis for an increased schedular rating for the veteran's pes planus. (R. at 11–12) without ever stating whether the symptomatology presented a secondary-service-connection claim. As the Federal Circuit stressed in *Collaro, supra*, the Board cannot frame an issue, as to which a timely NOD has been filed, to exclude arguments reasonably raised by the claimant and then proceed to adjudicate the claim based solely on those reframed grounds.

■ In light of the foregoing, the Court holds that the veteran's March 1991 NOD did in fact raise the issue of *all possible* bilateral lower-extremity conditions secondary to bilateral pes planus, and was not limited to the specific conditions of DJD and diabetic neuropathy addressed in the initial RO determination and in the subsequent RO and BVA decisions that followed and, further, that the Court has jurisdiction over the matter. *See Collaro, supra.* Finally, the fact that the Board issued a decision remanding the veteran's claim for further development prior to the BVA decision here on appeal but subsequent to the RO determination underlying the veteran's NOD (R. at 396–400) does not affect our jurisdiction; disposition of a claim by an RO upon remand from the Board does not create a new decision by the AOJ. *See Hamilton,* 4 Vet.App. at 536–37, *aff'd,* 39 F.3d at 1585; *Godfrey v. Brown,* 7 Vet.App. 398, 409 (1995) (entity disposing of a claim on remand from Board does not act as AOJ (describing *Hamilton* )); *see also Anglin v. West,* 11 Vet.App. 361, 363 (1998) (Court does not have jurisdiction to consider claim re-

manded by Board because that remand is not "a final Board decision").

■ The Board is required to include in its decision a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; the statement must be adequate to enable an appellant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown,* 7 Vet.App. 517, 527 (1995); *Gilbert,* 1 Vet.App. at 57. In this case, the Board denied secondary service connection only as to DJD and diabetic neuropathy and did not discuss awarding secondary service connection for overuse, cramping, or any other lower-extremity condition (*see* R. at 1–12). Hence, we hold today that the Board erred in its failure to address these other claims for secondary service connection for conditions of the lower extremities.

■ However, where an appellant has not been harmed by an error in a Board determination, the error is not prejudicial. *See* 38 U.S.C. § 7261(b) ("Court shall take due account of the rule of prejudicial error"); *Edenfield v. Brown,* 8 Vet.App. 384, 390–91 (1995) (en banc). Having decided that the veteran reasonably raised a secondary-service-connection claim over which the Court has jurisdiction and which the Board erroneously failed to adjudicate, the Court now must determine if that failure was prejudicial to the veteran such that remand is appropriate.

■ Under 38 C.F.R. § 3.310(a) (1998), secondary service connection is to be awarded when a disability "is proximately due to or the result of a service-connected disease or injury". A claim for secondary service connection must, as must all claims, be well grounded under 38 U.S.C. § 5107(a). *See Dinsay v. Brown,* 9 Vet. App. 79, 86 (1996); *Jones (Wayne), supra* (requiring medical evidence showing relationship between service-connected disability and condition claimed to be secondarily service connected); *see also Locher v. Brown,* 9 Vet.App. 535, 539 (1996); *Libertine v. Brown,* 9 Vet.App. 521, 522 (1996). To be

well grounded, a service-connection claim generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the present disability. *Caluza v. Brown,* 7 Vet.App. 498 (1995); *see also Epps v. Gober,* 126 F.3d 1464, 1468 (Fed. Cir.1997) (expressly adopting definition of well-grounded claim set forth in *Caluza, supra* ), *cert. denied,* —— U.S. ——, 118 S.Ct. 2348, 141 L.Ed.2d 718 (1998); *Heuer v. Brown,* 7 Vet.App. 379, 384 (1995); *Grottveit v. Brown,* 5 Vet.App. 91, 93 (1993). For purposes of determining whether a claim is well grounded, the credibility of the evidence in support of the claim is presumed. *See Robinette,* 8 Vet.App. at 75. The determination whether a claim is well grounded is a matter subject to de novo review by this Court. *Id.* at 74.

On the basis of a de novo review of the record on appeal, the Court holds that the veteran has proffered evidence sufficient to well ground a claim for lower-extremity secondary service connection in the form of medical evidence of current calf pain and medical evidence linking that calf pain to his pes planus, including records from a December 1990 private medical examination (R. at 261 (noting that it was "possible" that the appellant's bilateral foot problems aggravated his left-calf problem)), a June 1991 examination (R. at 285 (opining that foot pain caused overuse syndrome of the muscles of the lower and upper leg)), a January 1993 private examination (R. at 374 (noting that pronation impacted the use of the lower extremities)), and a July 1995 VA examination (R. at 408 (noting that leg cramps may be related to abnormal foot posturing while walking)). Accordingly, the Court holds that the failure of the Board to address the veteran's well-grounded secondary-service-connection claim was prejudicial error for which remand is in order.

### III. Conclusion

Upon consideration of the foregoing analysis, the record on appeal, and the submissions of the parties, the Court affirms in part the October 1, 1996, BVA decision (as to the determination that the veteran is not entitled to an increased rating for his service-connected pes planus) and remands the matter of secondary service connection for conditions of the lower extremities (other than DJD of the left knee and diabetic neuropathy) for expeditious further development and issuance of a readjudicated decision supported by an adequate statement of reasons or bases, *see* 38 U.S.C. §§ 1110, 5107, 7104(a), (d)(1); 38 C.F.R. §§ 3.310(a), 4.71a, DC 5276; *Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1991)—all consistent with this opinion and in accordance with section 302 of the Veterans' Benefits Improvements Act, Pub.L. No. 103–446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims remanded by BVA or the Court). *See Allday,* 7 Vet.App. at 533–34. The Secretary's motion is denied. "On remand, the appellant will be free to submit additional evidence and argument" on the remanded claim. *Quarles v. Derwinski,* 3 Vet.App. 129, 141 (1992). The Court notes that a remand by this Court and by the Board confers on an appellant the right to VA compliance with the terms of the remand order and imposes on the Secretary a concomitant duty to ensure compliance with those terms. *See Stegall v. West,* 11 Vet. App. 268, 271 (1998). A final decision by the Board following the remand herein ordered will constitute a new decision that, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new Board final decision is mailed to the appellant.

AFFIRMED IN PART; REMANDED IN PART.