# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 99-106

RAYMOND GALLEGOS, APPELLANT,

v.

HERSHEL W. GOBER,
ACTING SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided    August 11, 2000    )

*James W. Stanley, Jr.*, of North Little Rock, Arkansas, was on the brief for the appellant.

*Leigh A. Bradley*, General Counsel; *Ron Garvin*, Assistant General Counsel; *Mary Ann Flynn*, Acting Deputy Assistant General Counsel; and *Gregory W. Fortsch*, all of Washington, D.C., were on the brief for the appellee.

Before NEBEKER, *Chief Judge*, and FARLEY and STEINBERG, *Judges*.

STEINBERG, *Judge*, filed the opinion of the Court. FARLEY, *Judge*, filed a dissenting opinion.

STEINBERG, *Judge*: The appellant, Vietnam veteran Raymond Gallegos, appeals through counsel a December 9, 1998, Board of Veterans' Appeals (BVA or Board) decision that denied entitlement to an earlier effective date for the award of Department of Veterans Affairs (VA) service connection for post-traumatic stress disorder (PTSD). Record (R.) at 9. The appellant has filed a brief, and the Secretary has filed a brief. This appeal is timely and the Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). For the reasons set forth below, the Court will reverse the BVA decision and remand the matter to the Board for proceedings consistent with this opinion.

## I. Background

The veteran served on active duty from September 1966 to May 1970. R. at 12. In March 1992, he filed a claim for VA service connection for diabetes and chloracne. R. at 95-98. In a statement received by a VA regional office (RO) on August 31, 1993, he amended the claim to include a claim for service connection for PTSD. R. at 190a. A February 1993 social history, prepared by a private social worker, contained a diagnosis of PTSD. R. at 184. A November 1993 VA examination failed to make a diagnosis of PTSD and recommended hospital observation and evaluation. R. at 217. An April 1994 discharge summary, which included a mental status examination and psychological testing, included a diagnosis of dependent personality but not of PTSD. R. at 219-20. In September 1994, the VARO determined that the evidence of record failed to show a diagnosis of PTSD and denied the appellant's claim. R. at 222-24. On October 11, 1994, the appellant's representative at the time, the Disabled American Veterans (DAV), submitted a letter, entitled "Memo to Rating Board" [hereinafter "DAV letter"], which stated in full:

> After review of this veteran's claims file and the current rating decision, it is our opinion that denial of the veteran's claim for [PTSD] was a little bit premature. Further development, i.e., review of the Social Worker's statement in regards to referral to the Environment Support Group for verification of specific incidents for stressors would prove beneficial to fair evaluation of this veteran's claim.
>
> We suggest careful gleaning of the information from the Social Worker's statement would give sufficient detail without delay to request thorough investigation.
>
> Please do not forward this veteran the standard stressor development letter.
>
> Your appropriate attention is appreciated.

R. at 228.

The claim lay dormant until February 20, 1997, when the veteran, through attorney James W. Stanley, Jr., filed an application to reopen the disallowed service-connection claim for PTSD. R. at 272. In October 1997, the RO granted service connection for PTSD and assigned a February 20, 1997, effective date. R. at 332-35. Also in October 1997, the veteran filed a Notice of Disagreement (NOD) as to the assigned effective date. R. at 339. At a March 1998 hearing, Mr. Stanley indicated that an issue was whether the DAV letter was an NOD as to the September 1994 RO decision. R. at 367.

2

In the December 1998 BVA decision here on appeal, the Board determined that the appellant was not entitled to an effective date earlier than February 20, 1997. R. at 1-10. The BVA concluded that, because the September 1994 rating decision had become final when the appellant failed to file a valid NOD, an effective date of August 31, 1993, the date of receipt of the appellant's original claim for PTSD service connection, was not warranted. R. at 4. The Board decided that the DAV letter was not a valid NOD as to the September 1994 RO decision because, although it could reasonably be construed as disagreeing with the RO decision, it "could not be reasonably construed to indicate the appellant's desire for appellate review". R. at 8. The BVA stated that a note attached to the letter reflected that the RO had understood it to be a request for further development. *Ibid.* In their briefs, the appellant and the Secretary both indicate that they are unable to locate this note. Appellant's Brief (Br.) at 8; Secretary's Br. at 7. The note is not part of the record on appeal (ROA) before the Court.

## II. Analysis

### A. Effective-Date Law

The determination of the effective date for an original claim is governed by 38 U.S.C. § 5110(a), which provides:

> Unless specifically provided otherwise in this chapter, the effective date of an award based on an original claim, a claim reopened after final adjudication, or a claim for increase, of compensation, dependency and indemnity compensation, or pension, shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor.

*See also* 38 C.F.R. § 3.400(b)(2) (1999) (providing that effective date shall be date of receipt of claim or date entitlement arose, whichever is later, unless claim received within one year after separation from service); *Tucker v. West*, 11 Vet.App. 369, 372 (1998) (concerning effective date of original claim for service connection); *Dinsay v. Brown*, 9 Vet.App. 79, 87 (1996). In his brief, the appellant advises the Court that at issue here is "whether or not [the DAV letter] was a valid NOD, thereby establishing an earlier effective date" for the PTSD service-connection award. Br. at 6. If the appellant is correct that the DAV letter was a valid NOD, his 1993 claim remains open and pending, and thereby pertinent to the decision on the proper effective date for his PTSD rating. *See*

3

38 C.F.R. § 3.160(c) (1999) (a "[*p*]*ending claim*" is an "application, formal or informal, which has not been finally adjudicated").  Although this law forms the backdrop for this case and shows why the NOD question is critical to the outcome of the merits decision as to effective date, the Court will address only the NOD question in this opinion.

### B.  NOD Statute and Regulation

Section 7105 of title 38 of the U.S. Code provides as follows in pertinent part:

>  (a)  *Appellate review will be initiated* by a notice of disagreement and completed by a substantive appeal after a statement of the case is furnished as prescribed in this section.  Each appellant will be accorded hearing and representation rights pursuant to the provisions of this chapter and regulations of the Secretary.

>  (b)(1)  Except in the case of simultaneously contested claims, notice of disagreement *shall be filed within one year from the date of mailing of notice of the result of initial review or determination*.  Such notice, and appeals, must be *in writing and be filed with the activity which entered the determination with which disagreement is expressed* (hereafter referred to as the "agency of original jurisdiction" [(AOJ)]).  A notice of disagreement postmarked before the expiration of the one-year period will be accepted as timely filed.

>  (2)  *Notices of disagreement, and appeals, must be in writing and may be filed by the claimant, the claimant's legal guardian, or such accredited representative attorney, or authorized agent* as may be selected by the claimant or legal guardian.  Not more than one recognized organization, attorney, or agent will be recognized at any one time in the prosecution of a claim.

>  (c)  If no notice of disagreement is filed in accordance with this chapter within the prescribed period, the action or determination shall become final and the claim will not thereafter be reopened or allowed, except as may otherwise be provided by regulations not inconsistent with this title.

>  (d)(1)  Where the claimant, or the claimant's representative, within the time specified in this chapter, files a notice of disagreement with the decision of the agency of original jurisdiction, *such agency will take such development or review action as it deems proper under the provisions of regulations not inconsistent with this title.  If such action does not resolve the disagreement either by granting the benefit sought or through withdrawal of the notice of disagreement, such agency shall prepare a statement of the case*. . . .

(Emphasis added.)

4

The Secretary has promulgated the following regulation implementing 38 U.S.C. § 7105 that purports to define what constitutes an NOD:

> A written communication from a claimant or his or her representative expressing dissatisfaction or disagreement with an adjudicative determination by the agency of original jurisdiction and a desire to contest the result will constitute a Notice of Disagreement. While special wording is not required, the Notice of Disagreement must be in terms which can be ***reasonably construed as disagreement with that determination and a desire for appellate review***. If the agency of original jurisdiction gave notice that adjudicative determinations were made on several issues at the same time, the specific determinations with which the claimant disagrees must be identified. . . .

38 C.F.R. § 20.201 (1999) (emphasis added). "'Whether a document is an NOD is a question of law for the Court to determine de novo under 38 U.S.C. § 7261(a).'" *Buckley v. West*, 12 Vet.App. 76, 82 (1998) (quoting *Beyrle v. Brown*, 9 Vet.App. 24, 27-28 (1996)). Accordingly, determining the effect of the regulatory language emphasized above is the crux of this case.

### C. Relationship Between Statute and Regulation

In its December 1998 decision, the BVA determined that the DAV letter was not a valid NOD because, although it may be read as expressing disagreement with the September 1994 RO decision, it "could not be reasonably construed to indicate the appellant's desire for appellate review" by the Board, as the Board construed the regulation (§ 20.201) to require. The specific requirement that an NOD "must be in terms which can be reasonably construed as . . . a desire for appellate review" by the BVA is not stated in section 7105 or anywhere else in statute. Thus, the Court must consider the validity of this regulatory provision. *See Gardner v. Derwinski*, 1 Vet.App. 584, 586 (1991), *aff'd sub nom. Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir. 1993), *aff'd*, 513 U.S. 115 (1994).

"'The starting point in interpreting a statute is its language.'" *Lee (Raymond) v. West*, 13 Vet.App. 388, 394 (2000) (quoting *Good Samaritan Hospital v. Shalala*, 508 U.S. 402, 209 (1993)).

> The "plain meaning [of a statute] must be given effect unless a 'literal application of [the] statute [or regulation] will produce a result demonstrably at odds with the intention of its drafters.'" *Gardner*[, *supra*]; *Fagan*[ *v. West*], 13 Vet.App. [48,] 52 [(1999)]; *Curtis*[ *v. West*], 11 Vet.App. [129,] 133 [(1998)]. "If the intent of Congress is clear, that is the end of the matter". *Skinner v. Brown*, 27 F.3d 1571, 1572 (Fed.Cir. 1994) (quoting *Chevron, U.S.A., Inc. v. Natural Resources Defense*

*Council, Inc.*, 467 U.S. 837, 842 . . . (1984)), *aff'ing* 4 Vet.App. 141 (1993) (mem.).

*Lee (Raymond)*, *supra*. Here, the statute provides clearly on its face that appellate review is initiated by a "notice of disagreement". The statute specifies the five elements for such an NOD: That it must (1) express disagreement with a specific determination of the agency of original jurisdiction (generally a decision by an RO [hereinafter referred to as "RO decision"]) (§ 7105(d)(2)); (2) be filed in writing (§ 7105(b)(1), (b)(2)); (3) be filed with the RO (§ 7105(b)(1)); (4) be filed within one year after the date of mailing of notice of the RO decision (§ 7105(b)(1)); and (5) be filed by the claimant or the claimant's authorized representative (§ 7105(b)(2)). The only content requirement is an expression of "disagreement" with the decision of the RO.

Here, a plain reading of 38 U.S.C. § 7105 shows a statutory scheme whereby a document that satisfies the five specified elements is an NOD and thereby *initiates* appellate review. The NOD triggers a series of sequential steps that may lead to an appeal to the Board. The *first step* of the ensuing process initiated by an NOD under section 7105(d)(1) is the "development or review action" taken by the RO to try to resolve the disagreement. Specifically, VA regulations require that, after an NOD is timely filed, the RO "must reexamine the claim and determine if additional review or development is warranted". 38 C.F.R. § 19.26 (1999). Thereafter, and only "[i]f such action does not resolve the disagreement either by granting the benefit sought or through withdrawal of the" NOD, the RO issues an SOC (or a Supplemental SOC (SSOC)). 38 U.S.C. § 7105(d)(1); *see* 38 C.F.R. § 19.26.

The clarity and completeness of the statute has been determined by our opinion in *Tomlin v. Brown*, 5 Vet.App. 355 (1993). In applying § 20.201 in *Tomlin*, this Court held that "we construe the regulation to impose no technical formal requirements for an NOD beyond the requirements set by the statute, for to impose any such requirement would exceed the Secretary's [regulatory] authority . . . [under] 38 U.S.C.[] § 501". *Tomlin*, 5 Vet.App. at 357; *see* 38 U.S.C. § 501(a) ("[t]he Secretary has authority to prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by the Department and are consistent with those laws"); *Lee (Raymond)*, 13 Vet.App. at 397 ("Secretary's authority under section 501(a) is restricted to actions that are 'consistent with [the] laws [administered by VA]'"). The Court so held in the context of construing the statutory requirement that an NOD "must be in writing" as being satisfied by the

6

printed transcript of an RO hearing. *Ibid.* In sustaining that transcript as an NOD, the Court in *Tomlin* made **no** reference to any "desire for appellate review", but rather stated only:

> [W]e find that the oral statement of appellant's accredited representative at the May 1988 hearing, that appellant continued to claim a 20% rating, meets the statutory definition of an NOD. It was timely, it was addressed to the AOJ, and it was presented by appellant's accredited representative. When it was transcribed on July 25, 1988, it met the remaining statutory requirement that it be "in writing." We must conclude that, ***having met all statutory requirements***, the statement in question was the NOD as to the claim now on appeal. The date of certification of the transcript by VA is the date of filing.

*Id.* at 357-58 (emphasis added).

In other words, *Tomlin* required **only** that the NOD be timely filed with the RO and express disagreement by seeking a higher rating (thereby implying dissatisfaction with the lower rating assigned by the RO), be filed by or for the claimant, and be "in writing". It did not require -- or even refer to -- an expression of a desire for appellate review, or a reasonable implication of such a desire, as the regulation appears to call for. Indeed, we can find no precedential action of this Court that has held that a document that satisfied the five statutory elements was not a valid NOD **solely** because it did not express "a desire for appellate review". *Cf. Fenderson v. West*, 12 Vet.App. 119, 128 (1999) (NOD sustained that included statement "[p]lease send me a statement of the case", i.e., reference to appeal process); *Buckley*, 12 Vet.App. at 79 (NOD sustained that stated "please accept this as a Notice of Disagreement", i.e., called itself NOD); *Beryle*, 9 Vet.App. at 27 (NOD sustained that requested "new SSOC be issued and that there be an 'expeditious transfer of the file to the [Board]'", i.e., included reference to appeal process). The Court in *Tomlin* thus, by implication, read out of the regulation any added requirement of an expression of a desire for appellate review; indeed, as we noted above, the Court made no reference to that part of the regulation although it quoted the other decisive portions of it. *Tomlin*, 5 Vet.App. at 357.

The difficulty with § 20.201 is that it may be read as implying that a VA claimant must intend to appeal ***to the Board*** at the time that he or she files an NOD. Indeed, this is how our dissenting colleague seems to interpret the regulation. *Infra* at __, slip op. at 15. Any such construction makes no sense under the statutory scheme, however. All that an NOD-filing claimant need desire is review and development by the ***RO*** followed by its issuance of an SOC (or SSOC) if the claimant's

7

disagreement is not resolved by the RO. This is the process required by section 7105(d)(1). Ultimately, if the claimant is still dissatisfied after receiving the SOC (or SSOC), he or she **then** may pursue an appeal **to the BVA** by filing a Substantive Appeal, and only then does the case go forward to the Board for its review. In other words, after an NOD is filed, it is quite possible that it may not become necessary to transmit the case to the BVA.

How then can it be reasonable for the Secretary to require that every denied VA claimant must, at the time he or she files an NOD, express a desire for BVA review? The answer is quite simply that it cannot be reasonable and that, accordingly, such a regulatory requirement would not be "consistent with" the statutory provisions, as it must be in order to be a valid regulatory requirement promulgated under 38 U.S.C. § 501(a). Indeed, the Secretary could promulgate a regulation only if the statute left a "gap" to be filled in by the Secretary, *see Chevron U.S.A. Inc.*, 467 U.S. at 843; *see also Lee (Raymond)*, 13 Vet.App. at 395-96. As we recently held in *Lee (Raymond)*:

> The deficiency in the Secretary's contention that the statute leaves a "gap" for him to fill in becomes all the more apparent when we apply the injunction that "when interpreting statutes, the court is required to look at the context and provisions of the law as a whole." *Degmetich v. Brown*, 104 F.3d 1328, 1332 (Fed.Cir. 1997).

*Lee (Raymond)*, 13 Vet.App. at 395. Regarding section 7105, as we have already indicated, the *Tomlin* opinion stands for the proposition that the statute creates a full and complete process for initiating and perfecting a request for "appellate review" following the filing of an NOD that initiates the sequential steps in that review process that **may** lead to review by the BVA on appeal. Hence, we conclude that there is no "gap" in this statutory scheme and that the Secretary, rather than having filled in the gap conjured up by the dissenting opinion, has by regulation raised a barrier to appellate review where none exists in section 7105.

Moreover, in considering the validity of the Secretary's NOD regulation, we must bear in mind that we are expounding upon an adjudication system deliberately designed by Congress to be pro-claimant. *See Hensley v. West*, 212 F.3d 1255, 1262 (Fed. Cir. 2000); *Hayre v. West*, 188 F.3d 1327, 1333 (Fed. Cir. 1999); *Hodge v. West*, 155 F.3d 1356, 1362-64 (Fed. Cir. 1998). Consequently, even were we to find some ambiguity in the statute, which we do not, we would be compelled to resolve "'interpretative doubt . . . in the veteran's favor'". *Boyer v. West*, 210 F.3d 1351,

1355 (Fed. Cir. 2000) (quoting *McKnight v. West*, 131 F.3d 1483, 1485 (Fed. Cir. 1997) (quoting *Brown v. Gardner*, 513 U.S. 115, 118 (1994))); *see Allen v. Brown*, 7 Vet.App. 439, 448 (en banc) (applying *Gardner* to resolve interpretative doubt in veteran's favor).

Finally, we must not lose sight of the forest as we examine the trees in it. An NOD operates not only as the linchpin to a VA claimant's obtaining full administrative review from the Secretary but also as the indispensable ticket to judicial review in this Court. Congress specifically provided in Veterans' Judicial Review Act (VJRA) section 402 that judicial review would be available when an NOD "filed under section [7105]" is submitted on or after the enactment of the VJRA. *See* VJRA, Pub. L. No. 100-687 § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C. § 7251 note); *Barrera v. Gober*, 122 F.3d 1030, 1031 (Fed. Cir. 1997); *Grantham v. Brown*, 114 F.3d 1156, 1157 (Fed. Cir. 1997), *rev'g* 8 Vet.App. 228 (1995); *Hamilton v. Brown*, 4 Vet.App. 528, 531 (1993) (en banc), *aff'd*, 39 F.3d 1574 (Fed. Cir. 1994). Without an effective NOD, therefore, a VA claimant cannot obtain access to this Court. To permit the Secretary -- by adding via regulation to the statutory requirements for an NOD -- to insulate from Court review adjudicative decisions made on his behalf would fly in the face of the remedial nature of the VJRA in providing judicial review to veterans and other VA claimants. *See Smith (William) v. Brown*, 35 F.3d 1516, 1525 (Fed. Cir. 1994) ("courts are to construe remedial statutes liberally to effectuate their purposes . . . [and v]eterans benefits statutes clearly fall in this category"). It would be just as unconscionable to allow the Secretary to erect such "a shield against judicial review" as it would have been for us to have allowed the BVA Chairman to "defeat the right to judicial review at a critical juncture in a case by ordering reconsideration of a prior [BVA] decision which is beyond the reach of that right." *Smith (George) v. Brown*, 8 Vet.App. 546, 553 (1996) (en banc). As Judge Plager wrote in *Barrera*, "when construing ambiguities in the [VJRA], we should err, if we err at all, on the side of protecting a veteran's right to the judicial review Congress has mandated." *Barrera*, 122 F.3d at 1040 (Plager, J., concurring). In light of the foregoing analysis, there is no basis for affording the Secretary even the slightest latitude to make it more difficult for a claimant to file an NOD when VA already has on file a document that satisfies the statutory criteria for an NOD.

### D. Application of Law to Facts of Case

In the instant case, the Board interpreted the "appellate review" language in § 20.201 as follows:

> The purpose of the Notice of Disagreement is to initiate appellate review by informing VA, within one year from the date of VA's mailing of the notice of the result of a determination by an RO[,] of the claimant's **intent to appeal to the Board**. *Tomlin* [], 5 Vet.App. [at] 357. . . .
>
> The Board finds that the October 1994 letter can be construed by a broad and favorable interpretation to indicate that the appellant was in disagreement with the September 1994 rating decision. The representative indicated the decision was "premature" and asked for further development of the [PTSD] stressors, which can be construed to indicate his dissatisfaction with the denial of service connection.
>
> However, the letter cannot be reasonably construed to indicate the appellant's desire for appellate review. **The letter submitted by an accredited representative did not give the VA notice of intent to appeal to the Board.** It was in every way a request that the RO take further action in developing stressor evidence. The note attached to the letter reflects the RO's understanding that it was a request for further development and that there was no actual notice of intent to appeal.

R. at 7-8 (emphasis added). As our foregoing discussion demonstrates, the Board was mistaken in its interpretation of § 20.201. Although some prior decisions of this Court may have, in dictum, given credence to similar interpretations, as has been established above the Court has never ***directly*** addressed this issue. We do so now, and hold that § 20.201, to the extent that it might be read as requiring that an NOD express a desire for **BVA review**, runs afoul of the *Tomlin* injunction against VA's adding a "technical formal requirement[] for an NOD beyond the requirements set by the statute" and thereby "exceed[s] the Secretary's authority" to prescribe regulations under 38 U.S.C. § 501. *Tomlin*, 5 Vet.App. at 357; *see also Bernier v. Brown*, 7 Vet.App. 434, 438 (1995) (invalidating VA regulation to the extent that Secretary's interpretation of it is followed).

Therefore, insofar as § 20.201 may be interpreted as adding a requirement of an expression of a desire for **BVA** review, we hereby invalidate it. *See Lee (Raymond)*, 13 Vet.App. at 397; *Bernier* and *Gardner*, both *supra*. To the extent that § 20.201 may be read as requiring only an expression of a desire for further development and review action by the RO, it adds nothing to the statutory language requiring an expression of disagreement; that is, such a desire is inherent in the submission of an NOD under section 7105 given the sequential steps it establishes once an NOD is

filed to "initiate[ ]" "[a]ppellate review".  38 U.S.C. § 7105(a); *cf. Strott v. Derwinski*, 964 F.2d 1124, 1127 (Fed. Cir. 1992) (holding that hearing at RO held after NOD and Substantive Appeal are filed "is part of the appellate process").  In either event, the regulatory reference to "a desire for appellate review" cannot support finding invalid as an NOD a document that otherwise complies with the five section 7105 elements of an NOD.  Indeed, to hold otherwise would be contrary to the legislative history accompanying the adoption in 1962 of the NOD legislative language; the Senate committee then stated that the purpose of the bill regarding NODs was to "place the veteran . . . in a better position to develop new evidence available and to fully prepare and present his appeal".  S. Rep. No. 1843 (1962), *reprinted in* U.S.C.C.A.N. 2570, 2577.

It is this very same further development and review by the RO that the DAV letter was requesting in this case.  Because such further preparation is contemplated by section 7105(d)(1) after the submission of an NOD (i.e., further RO development and review), holding that the document at issue here is not an NOD would frustrate that legislative intent because, in this case, the veteran *specifically requested* further preparation.

### E.  DAV Letter Constituted NOD

It is undisputed that the DAV letter fulfilled the five section 7105 elements of an NOD: It (1) expressed disagreement with an RO decision, (2) was in writing, (3) was filed with the RO, (4) was filed within one year after the date of mailing of notice of the result of that RO decision, and (5) was filed by the claimant's authorized representative.  *See* 38 U.S.C. § 7105; R. at 7-8; Appellant's Br. at 7; Secretary's Br. at 3, 7.  The Board expressly found as fact that the DAV letter can "be construed . . . to indicate that the appellant was in disagreement with the September 1994 rating decision".  R. at 8.  Because, as we held above, 38 C.F.R. § 20.201 *cannot* be read as imposing any formal requirements beyond those set by 38 U.S.C. § 7105, *see Tomlin*, *supra*, and, because the expression of a desire for appellate review is either such an impermissible added requirement or an *inherent* element of an NOD, the requirements of the statute are all that the veteran was required to satisfy, and it is undisputed that he did so via the DAV letter.  Accordingly, we hold that the veteran filed a valid NOD as to the September 1994 RO decision.  Therefore, the Court will reverse the December 1998 BVA decision to the contrary and remand the claim to the Board for further

adjudication as to the effective date of the award of service connection for the veteran's PTSD. *See* 38 U.S.C. § 7261(a)(1).

### III. Conclusion

Upon consideration of the ROA and the pleadings of the parties, the Court reverses the December 9, 1998, BVA decision and remands the matter to the BVA for proceedings consistent with this opinion. The Court notes that a remand by this Court and by the Board confers on an appellant the right to VA compliance with the terms of the remand order and imposes on the Secretary a concomitant duty to ensure compliance with those terms. *See Stegall v. West*, 11 Vet.App. 268, 271 (1998). A final decision by the Board following the remand herein ordered will constitute a new decision that, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new Board final decision is mailed to the appellant. *See Marsh v. West*, 11 Vet.App. 468, 472 (1998).

REVERSED AND REMANDED.

FARLEY, *Judge*, dissenting: In my view, 38 C.F.R. § 20.201 was promulgated by the Secretary pursuant to his lawful authority and its substantive terms are fully consonant with the spirit and the letter of the scheme of title 38, U.S. Code. Therefore, I cannot join with the majority in striking down that regulation. Nor can I agree to a reversal of the BVA decision which properly interpreted the regulation and applied it to the facts presented in this matter. Thus, I respectfully dissent.

Section 7105 of title 38, U.S. Code, provides that

> [a]ppellate review will be initiated by a notice of disagreement . . . [which] shall be filed within one year from the date of mailing of notice of the result of initial review or determination. Such notice . . . must be in writing and be filed with the activity which entered the determination with which disagreement is expressed. . . . Notices of disagreement . . . must be in writing and may be filed by the claimant, the claimant's legal guardian, or such accredited representative attorney, or authorized agent. If no notice of disagreement is filed in

accordance with this chapter within the prescribed period, the action or determination shall become final. . . ."

The term "notice of disagreement" is not defined further either by section 7105 or by section 101 of title 38 U.S. Code, which provides the definitions "[f]or the purposes of this title." However, pursuant to 38 U.S.C. § 501(a),

The Secretary has authority to prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by the Department and are consistent with those laws, including--

(2) the forms of application by claimants under such laws. . . .

To ensure that his agencies of original jurisdiction would be able to facilitate the Congressional mandate that "[a]ppellate review will be initiated by a notice of disagreement," the Secretary, in the exercise of this § 501(a) authority, promulgated 38 C.F.R. § 20.201. In defining the term "notice of disagreement," the Secretary determined that, "[w]hile special wording is not required, the Notice of Disagreement must be in terms *which can be reasonably construed as* disagreement with that determination and *a desire for appellate review*." (Emphasis supplied.) To my mind, such a requirement is both consistent with the statutory scheme and reasonable as a matter of administrative precaution for, as a decade of experience with judicial review has demonstrated, an agency of original jurisdiction receives innumerable communications from claimants and the claimants' representatives. The RO must be able to reasonably ascertain a claimant's intention in sending his or her communication to be able to determine what course of action is required by law, and such determinations have to be consistent from RO to RO throughout the nation. The Secretary, in promulgating the regulation, merely articulated that an NOD must be capable of being "reasonably construed" as asking for appellate review so that adjudication officers would be on notice to initiate the review process. This provision is consistent with § 7105 and it fulfills the purpose of an NOD in the process set up under title 38 and as set forth in the statute and its legislative history. *See Meeks*, __ F.3d __, __, No. 99-7137, slip op. at 5-6 (Fed. Cir. June 27, 2000) ("[S]tatutory interpretation is a holistic endeavor that requires consideration of a statutory scheme in its entirety"; when interpreting a statute the court should "look to the provisions of the whole law, and to its object and policy." (internal citations omitted)).

13

As the majority noted, when reviewing a statute, if the Congressional intent is clear, the matter is ended. "If, however, the court determines Congress has not directly addressed the precise question at issue . . . if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984) (footnotes omitted). In a footnote in *Chevron*, the Court noted that:

> the court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding.

*Id*. at 843 note 11. An agency's administration of a program created by Congress "necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." *Id*. at 843 (quoting *Morton v. Ruiz*, 415 U.S. 199, 231 (1974)). Where "Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation." These types of regulations are controlling "unless they are arbitrary, capricious, or manifestly contrary to the statute." *Id*. at 843-44. Where the "legislative delegation to an agency on a particular question is implicit rather than explicit . . . a court may not substitute its own construction of a statutory provision for a reasonable interpretation" made by an agency. *Id*. at 844.

In *Chevron*, the Supreme Court noted that an agency's construction of a statutory scheme should be given "considerable weight" and that where the meaning of a statute involves "reconciling conflicting policies, and a full understanding of the force of the statutory policy" *(id*.), if the "choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, [the Court] should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned." *Id*. at 845 (quoting *United States v. Shimer*, 367 U.S. 374, 382, 383 (1961)). The Federal Circuit, in reviewing a decision from this Court, recently noted that where the "statute is silent or ambiguous about a matter, the court gives deference to interpretations of the agency charged with the duty to administer it." *Meeks*, __ F.3d at __, slip op. at 4; *see also Nationsbank v. Variable Annuity Life Ins. Co.,*

14

513 U.S. 251, 256 (1995) ("It is settled that courts should give great weight to any reasonable construction of a regulatory statute adopted by the agency charged with the enforcement of that statute.") (quoting *Clarke v. Securities Industry Assn.*, 479 U.S. 388, 403-04 (1987) (quoting *Investment Company Institute v. Camp*, 401 U.S. 617, 626-27 (1971))).

Congress did not specifically address the question this appeal raises: what constitutes an NOD? Although it can be concluded from the language of § 7105 and the term "notice of disagreement" itself that an NOD is a written communication expressing disagreement with an RO decision, no further guidance of a substantive nature has been offered by Congress. Whereas the majority sees this statutory void as somehow preventing the Secretary from promulgating a substantive regulation, I believe it is more properly viewed as a gap which not only could but should be filled by regulation under the Secretary's authority and responsibility to promulgate all rules and regulations that are necessary for carrying out the laws he administers. This delegation specifically included the forms of applications by claimants. 38 U.S.C. § 501(a)(2).

Just like the statutory language, the legislative history does not help to answer the question of what an NOD must contain. The portion of the legislative history cited by the majority does not define an NOD but describes its purpose, i.e., "to fully prepare and present [the veteran's] appeal." S. Rep. No. 1843, 1962 U.S. Code Cong. & Admin. News 2570, 2577; *Ante* at 10. Since nothing in the statute or its legislative history speaks to what should be contained in an NOD, the only question is whether the guidance provided by the Secretary in 38 C.F.R. § 20.201 is a "reasonable interpretation" of § 7105, and if the regulation "represents a reasonable accommodation of conflicting policies that were committed to the [Secretary's] care by [title 38]." *Chevron*, 467 U.S. at 845. I believe it is and it does.

The majority purports to find support for its views in *Tomlin v. Brown*, 5 Vet.App. 355 (1993) but its analysis cannot withstand scrutiny. In *Tomlin* the portion of the regulation at issue was that part which required that an NOD be a "written communication." The Court found that the statements of the appellant's representative at an RO hearing which had been transcribed satisfied the requirement that an NOD be in writing. In my view, *Tomlin* stands only for the proposition that, to the extent that 38 C.F.R. § 20.201 may be read to require the claimant or the claimant's representative's to actually be the one to write the communication expressing disagreement, such a

requirement would be beyond the Secretary's authority. The issue presented in this appeal was neither presented nor discussed in *Tomlin*. Undaunted by this apparent hurdle, the majority concludes that "[t]he Court in *Tomlin* thus, *by implication*, read out of the regulation any added requirement of an expression of a desire for appellate review." *Ante* at 7 (emphasis supplied). I cannot find in *Tomlin* the "implication" the majority here found, but even if I were able to catch a fleeting glimpse of one, I could not attach to it the significance the majority purports to discern. Nor can I agree with the majority's finding that *Tomlin* determined once and forever "[t]he clarity and completeness of the statute" or that it can stand for as large a "proposition" as the majority here attempts to lay down. *Ante* at 6. If the import of the majority's holding is that the Court, by quoting only a part of a regulation, effectively strikes down the omitted sections of that regulation, then through the decisions of this Court large segments of the VA regulatory scheme must already have been eviscerated.

The portion of the regulation at issue here does not run afoul of the maxim set forth in *Tomlin*, and relied upon by the majority, that the Secretary by regulation cannot impose any specific technical requirements not authorized by the statute. *Tomlin*, 5 Vet.App. at 357. The provision that the terms of the NOD be capable of being construed as seeking appellate review imposes no such technical requirement. The regulation does not require certain words or phrases; in fact, it recognizes that "special wording is not required." 38 C.F.R. § 20.201. As the statute makes clear, the NOD is a document filed to initiate appellate review and it is therefore reasonable for the Secretary to require that the communication filed by the claimant somehow indicate that appellate review is what he or she seeks. The majority asks the question how "can it be reasonable for the Secretary to require that every denied VA claimant must, at the time he or she files an NOD, express a desire for BVA review?" *Ante* at 7. The better question, given the nature of claims adjudication, the myriad pieces of correspondence, and the need for national consistency, is "how could such a requirement be unreasonable?" The answer is: the "desire for appellate review" provision of 38 C.F.R. § 20.201 is not unreasonable, and there is no basis in statutory or case law for striking that regulation as the majority does today. Mindful of the deference to be accorded an agency's construction of a statute, I would find the subject regulation to be a "reasonable interpretation" of 38 U.S.C. § 7105. *See Chevron*, *Meeks*, and *Nationsbank*, all *supra*.

16

In its decision, the majority points to the fact that the system of veterans benefits is designed to be pro-claimant, invoking Judge Plager's admonition in *Barrera* that a veteran's right to judicial review be protected. *Ante* at 9. There is nothing in this regulation which is anti-claimant or which erects "a barrier to appellate review where none exists in section 7105." *Ante* at 8. Congress has set forth certain procedures for obtaining judicial review and, as the majority must and has conceded, the initial requirement is a valid NOD. Section 20.201 is nothing more than "the formulation of policy and the making of rules" required of the Secretary in order to give form to the process leading to the judicial review mandated by Congress under the VJRA. *See Chevron*, 467 U.S. at 843.

Turning to the facts, and presuming the continuing vitality of § 20.201, when determining whether a document constitutes an NOD, the Court looks at both the actual wording and the context in which the communication was written. *Jarvis v. West*, 12 Vet.App. 559, 561 (1999). The October 1994 DAV letter calls the RO decision "premature," states the belief that "[f]urther development . . . would prove beneficial to fair evaluation of this veteran's claim," and "suggest[s] careful gleaning of the information from the Social Worker's statement would give sufficient detail without delay to request thorough investigation." R. at 228. The author of this "Memo to Rating Board" was an employee of the Disabled American Veterans, a recognized veterans service organization whose representatives are permitted to prosecute claims under the laws administered by VA. *See* 38 U.S.C. § 5902. That being so, it is reasonable to expect that the DAV is aware of the requirements for a valid NOD and for seeking appellate review of an RO decision under the pertinent statutes and regulations. The Board held that the DAV letter, while it may be construed to express disagreement with the RO decision, cannot be reasonably construed to express a desire for appellate review. Because I find no factual or legal error in that conclusion, I would affirm the BVA determination that the October 1994 DAV letter is not a valid NOD. Therefore, I respectfully dissent.