﻿Citation Nr: AXXXXXXXX
Decision Date: 06/25/19 Archive Date: 06/25/19

DOCKET NO. 181219-1284
DATE: June 25, 2019

ORDER

New and material evidence having been submitted, readjudication of the claim for service connection for a low back disability is warranted.

New and material evidence having been submitted, readjudication of the claim for service connection for a right shoulder disability is warranted.

Service connection for a low back disability is denied.

Service connection for a neck disability is denied.

Service connection for a right shoulder disability is denied.

Service connection for radiculopathy of the left lower extremity as secondary to low back disability is denied.

Service connection for radiculopathy of the right lower extremity as secondary to the low back disability is denied.

FINDINGS OF FACT

1. New evidence was received after the August 2013 denial that is relevant to the issue of entitlement to service connection for low back and shoulder disabilities.

2. The weight of the evidence is against a finding that the Veteran’s low back disability had its onset in service, arthritis of the lumbar spine did not manifest to a compensable degree within one year of discharge from service, and it is not shown to be causally or etiologically related to any disease, injury, or incident in service.

3. The weight of the evidence is against a finding that the Veteran’s neck disability had its onset in service, arthritis of the cervical spine did not manifest to a compensable degree within one year of discharge from service, and it is not shown to be causally or etiologically related to any disease, injury, or incident in service.

4. The weight of the evidence is against a finding that the Veteran’s right shoulder disability had its onset in service, arthritis of the shoulder did not manifest to a compensable degree within one year of discharge, and it is not shown to be causally or etiologically related to any disease, injury, or incident in service.

5. The Veteran’s left leg radiculopathy has been attributed to a non-service-connected disability.

6. The Veteran’s right leg radiculopathy has been attributed to a non-service-connected disability.

CONCLUSIONS OF LAW

1. The criteria for readjudicating the claim for service connection for a low back disability have been met. Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55, § 5108, 131 Stat. 1105 (2017). 

2. The criteria for readjudicating the claim for service connection for a right shoulder disability have been met. Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55, § 5108, 131 Stat. 1105 (2017). 

3. The criteria for service connection for a low back disability have not been met. 38 U.S.C. §§ 1131, 5107; 38 C.F.R. §§ 3.303, 3.307, 3.309.

4. The criteria for entitlement to service connection for a neck disability have not been met. 38 U.S.C. §§ 1131, 5107; 38 C.F.R. §§ 3.303, 3.307, 3.309.

5. The criteria for entitlement to service connection for a right shoulder disability have not been met. 38 U.S.C. §§ 1131, 5107; 38 C.F.R. §§ 3.303, 3.307, 3.309.

6. The criteria for entitlement to service connection for left leg radiculopathy as secondary to the low back disability have not been met. 38 U.S.C. §§ 1131, 5107; 38 C.F.R. §§ 3.303, 3.310.

7. The criteria for entitlement to service connection for right leg radiculopathy as secondary to the low back disability have not been met. 38 U.S.C. §§ 1131, 5107; 38 C.F.R. §§ 3.303, 3.310.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from January 1981 to December 1988.

In August 2018, the Veteran elected to participate in the RAMP appeal process and requested a “higher-level review’ of his claim. The RO conducted a higher-level review in a December 2018 rating decision, which confirmed and continued the previous RO decisions to deny the claims for service connection, and which was issued to the Veteran with an “appeal notification letter” in January 2019. 

In January 2019, the Veteran appealed the December 2018 RO decision directly to the Board, electing the “direct review” process. Based on the Veteran’s choice to pursue a direct review of his appeal, the Board will decide the appeal “based on the evidence of record at the time of the prior decision” and no additionally submitted evidence may be considered.

The new and material evidence issues regarding a low back disability and a right shoulder disability have been recharacterized to reflect the new evidentiary standard under the AMA. Pub. L. No. 115-55, § 5108, 131 Stat. 1105, 1109. In the December 2018 RAMP rating decision, the AOJ found that new and relevant evidence was submitted to warrant readjudicating the claims for service connection for right shoulder and low back disabilities. The Board is bound by this favorable finding. AMA, Pub. L. No. 115-55, § 5104A, 131 Stat. 1105, 1106-07.

New and Relevant Evidence

Whether new and relevant evidence was presented to warrant readjudicating the claims for service connection for right shoulder and low back disabilities.

The Veteran contends that he submitted evidence with his legacy system petition to reopen claims for service connection for right shoulder and low back disabilities that is new and relevant and warrants readjudication of the issues.

VA will readjudicate a claim if new and relevant evidenced is presented or secured. AMA, Pub. L. No. 115-55, § 5108, 131 Stat. 1105, 1109. “Relevant evidence” is evidence that tends to prove or disprove a matter in issue. AMA, Pub. L. No. 115-55, § 101(35), 131 Stat. 1105, 1105.

The questions in this case are whether the Veteran submitted evidence after the prior final denial of his claims for service connection for right shoulder and low back disabilities in the legacy system, in August 2013, and if so, whether that evidence is new and relevant to his claims.

In the December 2018 RAMP decision, the RO found that new and relevant evidence was submitted to warrant readjudicating the claims for service connection for right shoulder and low back disabilities. The Board is bound by this favorable finding. AMA, Pub. L. No. 115-55, § 5104A, 131 Stat. 1105, 1106-07. Thus, readjudication of the claims is warranted.

Service Connection

Service connection may be established for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303. Service connection means that the facts, shown by evidence, establish that a particular injury or disease resulting in disability was incurred coincident with service, or if preexisting service, was aggravated therein. 38 C.F.R. § 3.303 (a). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303 (d). 

To establish service connection for a disability, there must be competent evidence of the following: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship or nexus between the present disability and the disease or injury incurred or aggravated during service. Horn v. Shinseki, 25 Vet. App. 231, 236 (2010); Shedden, 381 F.3d at 1167; Gutierrez v. Principi, 19 Vet. App. 1, 5 (2004) (citing Hickson v. West, 12 Vet. App. 247, 253 (1999)). In many cases, medical evidence is required to meet the requirement that the evidence be “competent”. However, when a condition may be diagnosed by its unique and readily identifiable features, the presence of the disorder is not a determination “medical in nature” and is capable of lay observation. Barr v. Nicholson, 21 Vet. App. 303, 309 (2007).

Service connection for certain chronic diseases, including arthritis, may be presumed to have been incurred in service by showing that the disease manifested itself to a degree of 10 percent or more within one year from the date of separation from service. 38 U.S.C. §§ 1101, 1112; 38 C.F.R. §§ 3.307 (a)(3), 3.309(a). Such a chronic disease is presumed under the law to have had its onset in service even though there is no evidence of that disease during the period of service. 38 C.F.R. § 3.307 (a). 

The term “chronic disease” refers to those diseases listed under section 1101(3) of the statute and section 3.309(a) of VA regulations. 38 U.S.C. § 1101 (3); 38 C.F.R. § 3.309 (a); Walker v. Shinseki, 708 F.3d 1331, 1338 (Fed. Cir. 2013). For such diseases, the second and third elements of service connection may be established by demonstrating (1) that a condition was “noted” during service; (2) post-service continuity of symptoms; and (3) medical or, in certain circumstances, lay evidence of a link between the present disability and the continuity of symptoms. 38 C.F.R. § 3.303 (b); see Walker, 708 F.3d at 1340.

If a chronic condition is noted during service or during the presumptive period, but the chronic condition is not “shown to be chronic, or where the diagnosis of chronicity may be legitimately questioned,” i.e., “when the fact of chronicity in service is not adequately supported,” then a showing of continuity of symptomatology after discharge is required to support a claim for disability compensation for the chronic disease. Proven continuity of symptomatology establishes the link, or nexus, between the current disease and serves as the evidentiary tool to confirm the existence of the chronic disease while in service or a presumptive period during which existence in service is presumed.” Walker at 1336; 38 C.F.R. § 3.303 (b). 

Service connection may also be granted on a secondary basis for a condition that is not directly caused by the Veteran’s service. 38 C.F.R. 3.310. In order to prevail under a theory of secondary service connection, the evidence must demonstrate an etiological relationship between (1) a service-connected disability or disabilities and (2) the condition said to be proximately due to the service-connected disability or disabilities. Buckley v. West, 12 Vet. App. 76, 84 (1998); see also Wallin v. West, 11 Vet. App. 509, 512 (1998). In addition, secondary service connection may also be found in certain instances when a service-connected disability aggravates another condition. See Allen v. Brown, 7 Vet. App. 439 (1995); 38 C.F.R. 3.310 (b).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

1. Entitlement to service connection for a back disability

The Veteran claims that he developed a low back disability due to injuries incurred in service, to include a March 1988 motor vehicle accident (MVA). 

A veteran is presumed to have been sound upon entry into service when no preexisting condition is noted at entry. See 38 U.S.C. § 1111; Wagner v. Principi, 370 F.3d 1089, 1096 (Fed. Cir. 2004). Only conditions recorded in examination reports are to be considered “noted” upon entry. 38 U.S.C. § 1111; 38 C.F.R. § 3.304 (b). The burden then falls on the government to rebut the presumption of soundness by clear and unmistakable evidence that the veteran’s disability was both preexisting and not aggravated by service. See Wagner, 370 F.3d at 1096. If this burden is met, then the veteran is not entitled to service-connected benefits. See id. If the government fails to rebut the presumption of soundness, however, the veteran’s claim is one for direct service connection. See id. 

A veteran’s lay statements concerning a preexisting condition are not sufficient to rebut the presumption of soundness. See Paulson v. Brown, 7 Vet. App. 466, 470 (1995). Supporting medical evidence is needed to establish the presence of a preexisting condition. Crowe v. Brown, 7 Vet. App. 238 (1994). 38 C.F.R. § 3.304 (b)(1) (regarding the presumption of soundness) provides: History of preservice existence of conditions recorded at the time of examination does not constitute a notation of such conditions but will be considered together with all other material evidence in determinations as to inception. Determinations should not be based on history alone without regard to clinical factors pertinent to the basic character, origin and development of such injury or disease (emphasis added). 

The service treatment records reflect that on enlistment examination in January 1981, the Veteran reported a history of a pulled back muscle in January 1979. He denied a history of recurrent back pain and his spine was clinically evaluated as normal. 

In November 2017 a VA examiner, following a review of the claims file opined that the pre-service incident that resulted in a pulled back muscle resolved by the time that the Veteran entered service and did not result in any residuals which affected the Veteran during the time of his military service. The examiner explained that the medical literature did not support a finding that a pulled muscle would be of sufficient magnitude to result in the later development of lumbar degenerative disc disease, and degenerative arthritis of the spine. Accordingly, the Veteran is entitled to the presumption of soundness.

The Board finds that the presumption of soundness has not been rebutted by clear and unmistakable evidence that a low back disability clearly and unmistakably preexisted entry to active service. The Board acknowledges that the Veteran reported a history of a pulled back muscle on service induction. However, as noted above, his spine was consistently evaluated as normal and he denied a history of recurrent back pain throughout his service. Thus, even by his own contemporaneous statements, he did not have chronic residuals of a low back injury when he entered active service. This lay report of medical history of what a doctor may have diagnosed in 1979 is insufficient to conclude that chronic residuals of a back disability clearly and unmistakably preexisted active service. See Paulson, supra; see also Crowe, supra.

In summary, the evidence is not “clear and unmistakable” that he entered active service with preexisting, chronic residuals of a low back disability (and notably, he does not appear to contend this). The Board therefore will consider the claim as one for direct service connection. See Wagner, supra.

The service treatment records show that in January 1984, he was seen for a back strain which was noted to have resolved a few days later. Thereafter, the Veteran was involved in a MVA in March 1988. The assessment at that time was whiplash injury; however, the records do not mention any complaints regarding the back at that time. On separation from service in September 1988, the Veteran denied a history of recurrent back pain and his spine was clinically evaluated as normal. 

After service, imaging studies of the lumbar spine in July 2012, showed diffuse mild degenerative joint disease. A MRI of the lumbar spine dated May 2017, showed minimal anterolisthesis of L4 over L5 with retrolisthesis of L5 over S1, prominent epidural fat narrowing the distal thecal sac, and multilevel neural foraminal narrowing, most significant at L4-5. On VA examination in January 2013, the examiner noted a history of a back strain along with mild degenerative joint disease. 

As the Veteran’s service treatment records fail to document any chronic low back disability, nor was arthritis shown within one year following discharge from service, service connection cannot be established for arthritis on a presumptive basis. 38 U.S.C. § 1112; 38 C.F.R. §§ 3.307, 3.309.

The fact that there was no record of treatment for over 20 years is significant. A lack of contemporaneous medical treatment is a relevant factor in the Board’s analysis. See Maxson v. West, 12 Vet. App. 453, 459 (1999), affirmed sub nom. Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000) (holding that it was proper to consider the Veteran’s entire medical history, including a lengthy period of absence of complaints). Although the lack of contemporaneous medical records showing the event is not dispositive of the issue, here, the Board is not solely relying on the lack of documented treatment proximate to service in denying the claim, the lack of in-service findings have also been considered. See Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006).

On the question of a nexus between the currently diagnosed low back disability and service, there is evidence both for and against the claim.

A private physician, Dr. S.I., examined the Veteran in April 2017 and in a subsequent statement in May 2017, following a review of VA documents, indicated that although he could not say for certain whether the Veteran’s lumbar degenerative disc disease was directly linked to issues and injuries during service, it was possible that the condition was linked to injuries or exercises he performed in service. 

The Board finds this medical opinion, which suggests a nexus between the Veteran’s low back disability and service merely provides a speculative conclusion and is not supported by adequate rationale. See Warren v. Brown, 6 Vet. App. 4, 6 (1993). As such, the opinion lacks probative value.

Next, in August 2017, a VA examiner opined that it was at least as likely as not that the Veteran’s current lumbar spine disability was incurred in or caused by the claimed in service injury, event, or illness. In support of the opinion, the examiner noted that the service treatment records documented a history of MVA and back pain in 1984. Current MRI findings revealed chronic change of the lumbar spine, including disc herniation and degenerative joint disease. The examiner indicated that although there was no evidence of continuous treatment following military service, the current diagnosis was consistent with chronicity of the previous injury with progression over time. How this occurred is never explained. 

The rationale provided appears to be internally inconsistent, and thus it is afforded little probative value. 

On VA examination in September 2017, a VA examiner reported a diagnosis of degenerative arthritis of the spine. In a September 2017 addendum report the examiner noted that while a back strain was noted in the service treatment records, that condition resolved. Additionally, the Veteran did not injure his back in the 1988 MVA. The examiner noted that the Veteran’s current back problems were initially noted 25 years after discharge from service, which weighed against a finding that a strain noted in service evolved into a chronic condition. Moreover, mild degenerative changes of the spine were initially noted in in 2012. 

In November 2017, a VA examiner reviewed the evidence of record and concluded that the current thoracolumbar spine disability (back strain, lumbar degenerative disc disease, and degenerative arthritis of the spine) was less likely than not related to service, to include the back complaints/condition and/or motor vehicle accident during military service and/or his duties as a military policeman and/or infantryman in the Army. The examiner noted that according to the medical literature, the Veteran’s degenerative changes of the spine, initially discovered in 2012 at age 50, were consistent with the natural process of aging and correlated to the Veteran’s age at that time. Moreover, the service treatment records did not demonstrate that a lumbar spine condition was persistent while on active duty as determined by either the treatment notes, clinical course, or in the separation history and physical examination. Rather, the back strain noted in service appeared to have been a minor incident, self-limiting, which resolved as expected of such injuries, and unlikely to lead to additional complications later in life. In this regard, the medical literature did not support a finding that the type of trauma noted in service would predispose the Veteran to later pathological changes of the lumbar spine. Significantly, when degenerative changes of the lumbar spine were noted in 2012, they were mild in nature. Had there been a contributing influence from service events, there should have been pronounced advanced degenerative changes due to acceleration of the wear and tear process. The absence therefore favored that such changes arose as part of the gradual process seen with aging. 

The Board finds the opinion of the November 2017 VA examiner to be the most persuasive and probative in finding that the evidence does not support a conclusion that the Veteran’s current low back disability was incurred in service. The examiner’s findings were based on a review of the evidence, including examination findings. The examiner considered the complete record and the Veteran’s contentions, and provided an explanation as to why the evidence does not support a finding that the Veteran’s current thoracolumbar disability is related to service, citing to the facts and the medical literature in support. The Board finds this opinion is consistent with other evidence of records and is highly probative. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 302 -04 (2008) (holding that it is the factually accurate, fully articulated, sound reasoning for the conclusion that contributes to the probative value of a medical opinion).

To the extent the Veteran believes that his current low back disability is related to service, as a lay person, the Veteran has not shown that he has specialized training sufficient to render such an opinion. Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). In this regard, the diagnosis and/or etiology of the lumbar spine degenerative joint and disc disease require medical testing and expertise to determine. Moreover, whether the symptoms the Veteran experienced in service or following service are in any way related to his current lumbar spine disability is a matter that requires medical expertise to determine. See Clyburn v. West, 12 Vet. App. 296, 301 (1999) (“Although the Veteran is competent to testify to the pain he has experienced since his tour in the Persian Gulf, he is not competent to testify to the fact that what he experienced in service and since service is the same condition he is currently diagnosed with.”). Thus, the Veteran’s own opinion regarding the etiology of his low back disability is not a competent medical opinion.

In summary, there is no competent evidence of arthritis of the lumbar spine in service or within one year following discharge from service. Thus, the provisions regarding continuity of symptomatology are not applicable. See Walker, 708 F.3d at 1340 (holding that only conditions listed as chronic diseases in 38 C.F.R. § 3.309 (a) may be considered for service connection under 38 C.F.R. § 3.303 (b). Moreover, the most probative and persuasive evidence is against a finding that his current low back disability is related to service. Accordingly, the preponderance of the evidence is against the claim, and service connection is denied.

In reaching this decision, the Board has considered the applicability of the benefit of the doubt doctrine. However, the preponderance of the evidence is against the Veteran’s claim for service connection for a low back disability. As such, that doctrine is not applicable in the instant appeal, and the claim must be denied. See 38 U.S.C. § 5107 (b); Gilbert v. Derwinski, 1 Vet. App. 49, 55-56 (1990).

2. Entitlement to service connection for a neck disability

3. Entitlement to service connection for a right shoulder disability

The Veteran claims that he incurred his current right shoulder and neck disabilities in an MVA in service. 

The Veteran has a current diagnosis of degenerative joint and disc disease of the cervical spine and right shoulder impingement syndrome with degenerative changes. Accordingly, the first element of service connection, current disabilities, is met. 

The service treatment records show that the Veteran incurred a whiplash injury as a result of a MVA in March 1988. He reported neck and right shoulder pain. On follow-up regarding complaints of neck and right shoulder pain later that month, an assessment of acute muscle spasm was noted. Imaging studies of the cervical spine in March 1988, showed reversal of the normal cervical lordosis; otherwise, the exam was negative. On separation from service in September 1988, a neck condition was not recorded, and the Veteran’s spine and upper extremities were clinically evaluated as normal. The Veteran also denied having a painful or “trick” shoulder. 

Following discharge from service, in 2012 the Veteran reported shoulder pain for 10 years, with no history of injury. Imaging studies in May 2012 revealed acromioclavicular joint degenerative joint disease with inferior spur impingement of the right shoulder. An August 2012 MRI of the right shoulder showed partial thickness articular surface tears at the insertion of the supraspinatus and to a lesser extent infraspinatus tendon with associated tendinopathy and acromioclavicular joint hypertrophy with mild to moderate mass effect and questionable mild bicipital tenosynovitis. He subsequently underwent right shoulder surgery. The impression was probable prior postsurgical change with distal clavicular resection bilaterally and suspicious of right infraspinatus calcific tendinitis. The medical evidence initially recorded degrative changes of the cervical spine after 2017. 

As the Veteran’s service treatment records fail to document any chronic right shoulder or cervical spine disability, and as arthritis was not shown within a year of discharge from service, he is not entitled to a grant of service connection pursuant to the presumptive provisions of 38 C.F.R. §§ 3.307, 3.309(a), for chronic disease present to a compensable degree within the first post-service year. Further, the Court has indicated that the normal medical findings at the time of separation from service, as well as the absence of any medical records of a diagnosis or treatment for many years after service is probative evidence against the claims. See Mense v. Derwinski, 1 Vet. App. 354, 356 (1991) (affirming Board where it found that Veteran failed to account for the lengthy time period after service for which there was no clinical documentation of low back condition); see also Maxson, supra. Accordingly, competent evidence linking the current disability to service is needed to substantiate the claims.

Dr. S.I., examined the Veteran in April 2017 and in a subsequent statement in May 2017, following a review of VA documents, diagnosed cervical sprain/strain and degenerative disc disease, along with shoulder osteoarthritis and rotator cuff syndrome, and indicated that although he could not say for certain whether the Veteran’s cervical disc disease and shoulder disorder were directly linked to issues and injuries during service, it was possible that the conditions were linked to injuries or exercises he performed in service. 

The Board finds this medical opinion, which suggests a nexus between the Veteran’s right shoulder and neck disabilities and service merely provides a speculative conclusion and is not supported by adequate rationale. As such, the opinion lacks probative value. In this regard, the Board would never state that it is “impossible” for this disability to be related to service, therefore saying that it is “possible” provides very little evidence to the Board. That is not the question the Board must address. The question is whether it is at least as likely as not (50% or great chance), not whether is “possible”. 

On VA examination in August 2017, the examiner noted a history of a cervical strain and a history of MVA in service. The examiner opined that the current condition was less likely than not incurred in or caused by service. The examiner explained that a cervical sprain was an acute or subacute musculoskeletal condition. Given the large time gap between service and other confounding factors, such as natural progression of aging, it was not possible to directly correlate current neck disability with service, to include the MVA. As such, the claimed condition was less likely than not incurred in or caused by the claimed in-service injury. 

In November 2017, a VA examiner reviewed the evidence of record and found that the current neck condition (cervical strain, cervical disc disease, cervical stenosis) and right shoulder condition (osteoarthritis) were less likely than not incurred in or caused by the neck or shoulder complaints/condition and/or MVA during military service and/or his job as a military policeman and/or infantryman in the Army. The examiner explained that the type of injuries that the Veteran sustained while on active duty would be considered minor from a medical viewpoint. This was confirmed by the benign clinical course of treatment during service and separation history. Significantly, cervical spine x-rays in March 1985, did not demonstrate any significant structural abnormalities due to the MVA. Moreover, there were no medical records shortly after service that documented treatment for the neck or right shoulder. Consequently, it was more likely that the current cervical strain was due to more contemporary trauma, as opposed to the transient events in service many years earlier, which likely resolved. 

Concerning the right shoulder disability, the examiner found that the right shoulder pathology, initially shown after 2011, was consistent with the natural process of aging and the Veteran’s age at that time.

The Board finds that the November 2017 VA medical opinion is more persuasive than the opinion provided by Dr. S.I. The VA physician provided a rationale that sufficiently supports its conclusion and is consistent with other evidence of record. Furthermore, the November 2017 opinion is supported by citation to pertinent medical literature and the service and post service medical evidence.

For the above reasons, the Board finds that the November 2017 VA medical examiner’s rationale to be persuasive in finding that the observed in-service symptoms do not indicate a 50 percent or greater probability that the current cervical spine and right shoulder disabilities are related to service. See Nieves-Rodriguez, supra; see also Owens v. Brown, 7 Vet. App. 429, 433 (1995) (holding that VA may favor the opinion of one competent medical expert over that of another when decision makers give an adequate statement of reasons and bases).

The Board has considered the statements from the Veteran asserting that his current neck disorder and right shoulder disability were caused by service, to include injuries documented therein. The Veteran is certainly competent to report as to the observable symptoms he experiences and their history, but he cannot self-diagnose because of the medically complex nature of such a diagnosis. Layno v. Brown, 6 Vet. App. 465 (1994); Buchanan, 451 F.3d at 1336; See Jandreau, 492 F.3d at 1377. The ultimate questions in this case are related to an internal medical process which extends beyond an immediately observable cause and effect relationship. Id. Moreover, whether the symptoms the Veteran experienced in service or following service are in any way related to his current neck or right shoulder disorder, is a matter that requires medical expertise to determine. See Clyburn, 12 Vet. App. At 301. 

Simply stated, the Board can not ignore the evidence of the examiners with the best rational. 

Additionally, to the extent the Veteran is asserting continuity of symptomatology from service (which is not entirely clear), the Board finds such statements inconsistent with the overall record. In this regard, treatment records following the March 1988 MVA failed to document any residuals, and service treatment records after March 1988 show that the Veteran’s spine and right upper extremity were clinically evaluated as normal, no neck problems were noted, and the Veteran specifically denied shoulder problems. See Curry v. Brown, 7 Vet. App. 59, 68 (1994) (contemporaneous evidence has greater probative value than history as reported by the Veteran). 

Simply stated, both the best medical evidence in this case, and the facts of this case, provide highly probative evidence against his claims. 

As the preponderance of the evidence weighs against the Veteran’s claims, there is no reasonable doubt to be resolved, and the claims for service connection for neck and right shoulder disabilities must be denied. 38 U.S.C. § 5107; 38 C.F.R. §§ 3.102, 4.3; Gilbert, 1 Vet. App. at 55.

4. Entitlement to service connection for radiculopathy of the left lower extremity as secondary to the low back disability

5. Entitlement to service connection for radiculopathy of the right lower extremity as secondary to the low back disability

Concerning the Veteran’s claims for service connection for right and lower extremity radiculopathy, the Veteran has not asserted, nor does the record reflect that either his radicular symptoms first manifested during service or were otherwise related to any aspect of his service. It has only been claimed that the disabilities are secondary to the low back disability. Accordingly, since the Veteran does not contend that bilateral lower extremity radiculopathy is directly related to service and because the record similarly does not reasonably raise the theory of direct service connection, the Board will address only whether the Veteran is entitled to service connection for these disabilities on a secondary basis. See Robinson v. Mansfield, 21 Vet. App. 545, 552-56 (2008) (concluding “that the Board is not required sua sponte to raise and reject ‘all possible’ theories of entitlement in order to render a valid opinion” and “commits error only in failing to discuss a theory of entitlement that was raised either by the appellant or by the evidence of record”), aff'd sub nom. Robinson v. Shinseki, 557 F.3d 1355 (Fed.Cir.2009) (stating that “[w]here a fully developed record is presented to the Board with no evidentiary support for a particular theory of recovery, there is no reason for the Board to address or consider such a theory”).

The findings set forth earlier in this decision reflect that service connection for a low back disability has not been established. As such, there is no factual or legal basis upon which to award service connection for a disability that is claimed as secondary to a disability that is not service connected. See 38 C.F.R. 3.310.

(Continued on the next page)

 

In reaching this conclusion, the Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against the claims, the benefit of the doubt rule is not applicable. 38 U.S.C. § 5107 (b); See Gilbert, 1 Vet. App. at 54.

 

JOHN J. CROWLEY

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD Azizi, T. 

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.